UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-80325-McCabe

PERRY LAFRANCE,

Plaintiff,

v.

BOARD OF TRUSTEES OF THE WEST PALM BEACH POLICE PENSION FUND, et al.,

Defendants.
_____________________________/

**ORDER ON MOTION TO DISMISS**

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss Amended Complaint. (DE 18). For the reasons set forth below, the Court **GRANTS** the **MOTION IN PART AND DENIES IT IN PART.**

## I. BACKGROUND

This is a pro se civil rights case brought by a former police officer against the Board of Trustees of the West Palm Beach Police Pension Fund (the "Board"), as well as three trustees of the Board—Jonathan Frost, Sean Williams, and Dana Fragakis (the "Individual Board Trustees"). (DE 8 ¶¶ 6–10). The Court accepts the following facts as true, taken from the Amended Complaint. (DE 8). Plaintiff is an African-American man who worked as a police officer for the City of West Palm Beach from January 2015 through September 2022. (DE 8 ¶¶ 6, 13). In December 2020, Plaintiff contracted COVID-19 in the course of his duties and sustained permanent respiratory impairment that prevented him from returning to full-duty police work. (DE 8 ¶¶ 14–16). Plaintiff had asthma and scoliosis before contracting COVID-19, but those conditions did not limit his ability to perform his police duties. (DE 8 ¶ 13).

Based on his COVID-related medical condition, Plaintiff submitted an application to the Board for "line of duty disability." (DE 8 ¶¶ 1, 19). The Board held a hearing on either June 14, 2024 or December 9, 2024 on Plaintiff's application.[1] Following the hearing, the Board found Plaintiff totally and permanently disabled but denied his request for line-of-duty disability classification. (DE 8 ¶¶ 16, 25, 79). At the hearing, Individual Board Trustee Frost attributed Plaintiff's disability to preexisting conditions rather than to line-of-duty causes. (DE 8 ¶¶ 25, 47). Individual Board Trustees Williams and Fragakis also participated in the hearing and voted to deny line-of-duty disability classification. (DE 8 ¶¶ 50–56).

Plaintiff alleges that the Board applied different standards to his case as compared to other similarly situated white officers, including Officers Babcock, Testa, and Williams. (DE 8 ¶¶ 17–24). He also alleges that the public meeting minutes from the final hearing included references to Plaintiff's individual diagnoses, including a false reference to tuberculosis. (DE 8 ¶¶ 27–30). Plaintiff alleges that the false reference to tuberculosis impaired his ability to obtain subsequent employment. (DE 8 ¶¶ 31, 81).

The Board issued its Final Order denying line-of-duty disability classification on February 14, 2025. (DE 8 ¶ 79). On December 5, 2025, Plaintiff submitted an Administrative Correction Petition asking the Board to reclassify his disability, to apply the standards used for other similarly situated officers, and to correct the false tuberculosis reference. (DE 8 ¶ 37). After Plaintiff filed the petition, the Board redacted the tuberculosis reference from the public minutes but issued no written correction or public acknowledgment of its alleged inaccuracy. (DE 8 ¶¶ 32–34).

---

[1] The Amended Complaint alleges that the disability hearing took place on June 14, 2024, but also alleges that the Board voted to deny classification on December 9, 2024. (DE 8 ¶¶ 25, 46–47, 79). Defendants also provided a transcript of the hearing, which indicates that it took place on December 9, 2024. (DE 18-1 at 4, 9). The Court need not resolve this discrepancy at this stage of the case.

On January 12, 2026, Board counsel informed Plaintiff that the Board had reviewed his petition but "took no action." (DE 8 ¶ 38). That same day, the Board made a conditional settlement offer to Plaintiff, whereby the Board agreed to waive its right to attorneys' fees arising from the hearing in exchange for a full release of all further claims. (DE 8 ¶ 35). Plaintiff declined the settlement offer. (DE 8 ¶ 36).

On January 13, 2026, Plaintiff filed a Motion for Reconsideration and Administrative Correction asking the Board to reconsider its prior action, apply the governing standard uniformly, and issue a written determination. (DE 8 ¶ 39). The next day, January 14, 2026, Plaintiff also filed a discrimination complaint with the City. (DE 8 ¶¶ 36, 39, 86). At some point in 2026, Plaintiff also filed a Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. (DE 8 ¶ 42).

On February 20, 2026, the Board held a meeting, during which Board counsel reported that Plaintiff had requested a rehearing and filed complaints with the City. (DE 8 ¶ 52). Individual Board Trustee Williams then moved to authorize the Board to pursue its right to collect attorneys' fees against Plaintiff in the bankruptcy court. (DE 8 ¶¶ 53, 89). The motion passed by a vote of 4–0, and the Board subsequently filed an adversary proceeding in Plaintiff's bankruptcy case seeking to enforce the Board's right to collect attorneys' fees as an exception to Plaintiff's discharge in bankruptcy. (DE 8 ¶ 89).

On February 26, 2026, the Plan Administrator responded to Plaintiff's request for reconsideration and told him that "all due process has been exhausted" and that the matter had been closed. (DE 8 ¶ 40). Plaintiff alleges that the Board held no hearing and issued no written merits determination on his Administrative Correction Petition, and that the Board likewise issued no written final order on his motion for reconsideration. (DE 8 ¶¶ 38–40, 73).

Based on these allegations, Plaintiff brings the following claims under 42 U.S.C. § 1983:

| **Count** | **Claim** | **Defendant** |
|---|---|---|
| I | Equal Protection—Racial Discrimination | Board, Frost, Williams, and Fragakis |
| II | Procedural Due Process—Property Interest | Board and Frost |
| III | Procedural Due Process—Liberty Interest | Board and Frost |
| IV | First Amendment Retaliation | Board, Frost, and Williams |

(DE 8). Plaintiff seeks declaratory and injunctive relief against the Board and compensatory and punitive damages against the Individual Board Trustees. (DE 8 at 18–19).

## II. <u>LEGAL STANDARD</u>

By way of this motion, Defendants seek dismissal of all counts pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As a general rule, courts hold pro se pleadings to a "less stringent standard than pleadings drafted by attorneys." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per

curiam). Nonetheless, courts have no obligation to "re-write" a pro se complaint to find a claim. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). When it appears that no construction of the factual allegations will support the cause of action, a court should order dismissal of the complaint. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. DISCUSSION

Defendants seek dismissal of all counts of the Amended Complaint. The Court will address each count in turn.

### A. Count I - Equal Protection under 42 U.S.C. § 1983

Count I alleges a violation of 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. To state a plausible § 1983 claim, a plaintiff must allege facts that show (1) a violation of a constitutional right, (2) committed by a person acting under color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

Here, Count I alleges that the Board and all three Individual Board Trustees violated the Equal Protection Clause of the Fourteenth Amendment, which provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike." *Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1311 (11th Cir. 2025) (cleaned up). Plaintiff alleges that the Defendants violated this provision by, among other things, applying different standards to his disability claim as compared to other similarly situated white police officers and denying his claim for line-of-duty disability classification based on his race. (DE 8 ¶¶ 61-67).

Defendants raise five arguments in support of dismissal, each of which the Court will address in turn.

**1. Res Judicata**

Defendants first seek dismissal of Count I based on res judicata. (DE 18 at 21). Specifically, Defendants argue that, following the Board proceedings, Plaintiff sought a writ of certiorari in state court on March 7, 2025 and the state court denied the writ on October 15, 2025. (DE 18 at 12). Based on this denial, Defendants urge the Court to dismiss the § 1983 claim alleged in Count I.

The Court rejects this argument because res judicata operates as an affirmative defense which cannot normally be raised and decided on a motion to dismiss. *See Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). Where, as here, res judicata does not appear on the face of the pleadings, a court must have a sufficient record of the prior proceedings to determine whether res judicata applies. *Id.* (noting that "before an action may be summarily dismissed on the ground of res judicata[,] the ends of justice require as a minimum that the defense of res judicata appear from the face of the complaint or that the record of the prior case be received in evidence") (cleaned up).

In the instant case, Defendants have not supplied this Court with the record of the state court proceedings related to the writ of certiorari. As such, the Court cannot resolve the res judicata issues. *See Williams v. City of Daytona Beach*, No. 6:24-CV-1672-JSS-NWH, 2025 WL 2230053, at *5 (M.D. Fla. Aug. 5, 2025) (declining to resolve the issue of res judicata at the motion to dismiss stage where the defense did not appear on the face of the complaint and the record did not provide sufficient information).

### 2. *Monell* Claim against the Board

Defendants next seek dismissal of Count I to the extent it alleges an entity-level claim against the Board itself. (DE 18 at 16). In support, Defendants argue that Count I fails to meet the demanding standard for entity-level § 1983 liability established by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In that case, the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983. *Id.* at 690. To demonstrate liability against a municipality, however, a plaintiff must do more than merely show the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691; *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992) ("[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer.").

As such, the Supreme Court recognizes § 1983 liability against municipalities only in very limited circumstances. As one such example, the Supreme Court recognizes that § 1983 liability may attach when the municipality itself adopts a formal policy, rule, or regulation that causes a constitutional violation. *Monell*, 436 U.S at 690. In *Monell*, for example, the municipality adopted a formal policy that required pregnant employees to take unpaid maternity leave before such leave was medically necessary. *Id.* at 660-61. As such, the municipality had adopted a formal policy that served as the "moving force" for a constitutional violation inflicted on female employees. *Id.* at 694-95.

Applying these standards here, Defendants argue that Count I must be dismissed because Count I fails to identify any formal policies, rules, or regulations of the Board that caused Plaintiff's constitutional injuries. The Court rejects this argument because a § 1983 plaintiff need

not identify a formal policy, rule, or regulation where, as here, the plaintiff challenges the action or decision of the municipality's final policymaker. *See Martinez v. City of Opa-Locka*, 971 F.2d 708, 713–15 (11th Cir. 1992) (explaining that a single decision by an official policymaker can establish an unconstitutional municipal policy and holding that a city manager's retaliatory termination decision subjected the city to § 1983 liability). In such cases, the action or decision of the final policymaker may serve as a basis for *Monell* liability. *Id.*

As applied here, Count I challenges the official actions and decisions of the voting members of the Board. (DE 8 ¶¶ 60-67). Given that the Board serves as the final policymaker of the pension fund, such actions and decisions constitute the official policies of the municipality for purposes of imposing § 1983 liability under *Monell*. As such, the Court rejects this argument for dismissal. *See Hamilton v. City of Clayton*, No. 2:22-CV-194-RWS, 2022 WL 20690355, at *6–7 (N.D. Ga. Dec. 22, 2022) (denying dismissal of municipal-liability claim based on an allegedly unconstitutional termination decision by final policymakers and rejecting the argument that the plaintiff also had to identify a separate policy or custom).

**3. Absolute Immunity**

Defendants next seek dismissal based on "absolute immunity," arguing that "all actions alleged were taken pursuant to well established statutory powers of the Board and the Board has absolute immunity for those actions." (DE 18 at 10, 27). Defendants cite no cases for this proposition, apart from *Carollo v. Platinum Advisors, LLC*, 319 So. 3d 686, 688–89 (Fla. 3d DCA 2021), a case that involved legislative immunity afforded to a city commissioner sued in his individual capacity. *Carollo* does not stand for the proposition that absolute immunity should be afforded to pension funds or pension fund board members. The Court rejects this argument as undeveloped. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting

that courts need not consider "perfunctory and underdeveloped" arguments and collecting cases); *Cousins v. Sch. Bd. of Orange Cnty., Fla.*, 687 F. Supp. 3d 1251, 1280 (M.D. Fla. 2023) (noting that courts are "not obligated to address arguments raised in passing").

**4. Quasi-Judicial Immunity**

Defendants next seek dismissal of Count I as to the Individual Board Trustees based on quasi-judicial immunity. (DE 18 at 14–16). As a general rule, judges enjoy absolute immunity from liability for damages for acts committed within their judicial jurisdiction. *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017). This immunity also extends to officials who perform functions comparable to those of judges when such officials act within the scope of their quasi-judicial authority. *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (noting that judicial immunity extends to persons whose "official duties have an integral relationship with the judicial process"). Quasi-judicial immunity applies to claims made against a defendant in an individual capacity. *Stevens*, 877 F.3d at 1301.

In deciding whether quasi-judicial immunity applies, courts apply a "functional approach" that looks to the duties performed by the official in question to determine whether such duties resemble the traditional duties of judges. *Id.* at 1302. Courts consider, among other factors, (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Id.* at 1302; *see also Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009) (noting that the functional approach "looks to the nature of the function performed, not to the identity of the person who performed it").

A defendant seeking quasi-judicial immunity bears the burden of establishing its application. *Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d 1271, 1282 (S.D. Fla. 2013). At the pleadings stage, a case should not be dismissed based on quasi-judicial immunity unless the face of the complaint shows that the official performed quasi-judicial functions. *See id.* (declining to apply quasi-judicial immunity at the pleading stage because the complaint did not sufficiently describe the hearing and its procedural safeguards).

Applying these standards here, the Court finds that quasi-judicial immunity extends to all of the conduct alleged in Count I against the Individual Board Trustees. This conduct includes adjudicating Plaintiff's benefit classification, holding a contested evidentiary hearing to resolve disputed issues, evaluating medical evidence, considering competing explanations for Plaintiff's disability, applying eligibility criteria to disputed facts, memorializing a determination in a written Final Order, and considering and resolving requests for reconsideration. (DE 8 ¶¶ 16, 46–56, 79). In the Court's view, these functions resemble the traditional duties of judges with sufficient similarity as to warrant quasi-judicial immunity. *See Flex v. Allentown Police Pension Fund Ass'n*, No. 5:24-CV-06601-JMG, 2025 WL 1426967, at *4-5 (E.D. Pa. May 14, 2025) (dismissing § 1983 claim against pension board members based on quasi-judicial immunity where board members made decisions following an adversarial hearing that involved testimony and cross examination of witnesses); *Fuller v. Bayona*, No. 23-24251-CIV, 2024 WL 4057602, at *2–3 (S.D. Fla. Sept. 5, 2024) (affording quasi-judicial immunity to a code-enforcement-board member for her participation in an adjudicatory proceeding). As such, Count I should be dismissed as to the Individual Board Trustees.

### 5. Failure to State a Claim

Finally, Defendants also seek dismissal of Count I as to all Defendants for failure to state a claim upon which relief can be granted. (DE 18 at 10). The Court rejects this argument as undeveloped. Defendants' motion makes no substantive arguments concerning Plaintiff's ability to state a plausible claim for violation of the Equal Protection Clause. Although Defendants refer briefly to "comparators" in their motion (DE 18 at 26), they do so only in connection with the res judicata argument. Defendants fail to make a fully developed argument on the merits of the Equal Protection Clause violation.

## B. Count II - Procedural Due Process (Property Interest) under 42 U.S.C. § 1983

Count II alleges a § 1983 claim against the Board and Individual Board Trustee Frost for violation of the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, a § 1983 plaintiff must allege facts that show (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

As applied here, Count II alleges that the Board and Individual Board Member Frost deprived Plaintiff of a constitutionally protected property interest, namely his line-of-duty disability benefits, without due process of law. (DE 8 ¶ 71). Specifically, Plaintiff alleges that these Defendants, among other things, denied Plaintiff his benefits based on criteria not contained in the Board's own stated rules, that they denied his benefits using different criteria than those used for similarly situated white officers, and that they denied his request for reconsideration without holding a hearing or issuing a written merits-based decision. (DE 8 ¶¶ 72–74).

Defendants raise five arguments in support of dismissal, each of which the Court will address in turn.

**1. Res Judicata**

Defendants first seek dismissal of Count II based on res judicata. (DE 18 at 21). The Court rejects this argument for the same reasons identified in part III.A.1 above, namely, Defendants have not supplied this Court with records of the state court proceedings that supposedly serve as a basis for res judicata. As such, the Court cannot resolve res judicata issues at this stage of the case.

**2. *Monell* Claim against the Board**

Defendants next seek dismissal of Count II as to the Board for failure to identify an official policy, rule, or regulation, as required by *Monell*. (DE 18 at 16). The Court rejects this argument for the same reasons identified in part III.A.2 above. Specifically, a § 1983 plaintiff need not identify a formal policy, rule, or regulation where, as here, the plaintiff challenges the actions or decisions of the municipality's final policymaker. *See Martinez*, 971 F.2d at 713–15.

**3. Absolute Immunity**

Defendants next seek dismissal of Count II based on absolute immunity. (DE 18 at 10). The Court rejects this undeveloped argument for the same reasons identified in part III.A.3 above. Specifically, *Carollo* concerns legislative conduct and does support absolute immunity in this case.

**4. Quasi-Judicial Immunity**

Defendants next seek dismissal of Count II as to the Individual Board Trustee Frost based on quasi-judicial immunity. (DE 18 at 14-16). The Court agrees with this argument for the same reasons identified in part III.A.4 above. Specifically, the Court finds that quasi-judicial immunity extends to the conduct alleged in Count II against Individual Board Trustee Frost, including adjudicating Plaintiff's benefit classification, presiding over the corrective action petition, and

resolving the corrective active petition. (DE 8 ¶ 74). In the Court's view, these functions resemble the traditional duties of judges with sufficient similarity as to warrant quasi-judicial immunity. As such, Count II should be dismissed as to Individual Board Trustee Frost.

**5. Failure to State a Claim**

Finally, Defendants seek dismissal of Count II for failure to state a claim upon which relief can be granted. (DE 18 at 10, 24–25). Specifically, they argue that, contrary to his allegations, Plaintiff received constitutionally adequate process. They contend that Plaintiff, among other things, underwent a physical examination, submitted materials through counsel, participated in depositions, received and reviewed his medical records, questioned witnesses through counsel, and obtained reconsideration of the Board's adverse determination. (DE 18 at 24–25).

The Court rejects this argument because it asks the Court to look outside the four corners of the pleadings in assessing whether Plaintiff received constitutionally adequate process. The Court cannot resolve disputed issues of fact on a motion to dismiss and declines to do so here. Moreover, to the extent Defendants seek dismissal based on the availability of post-hearing remedies in Florida state court, the Court declines to address this argument because Defendants raised it for the first time in their reply. (DE 21 at 9, 11). "[I]t is well-settled that a party cannot raise an argument for the first time in [its] reply brief." *Alvarez Cantun v. Miami-Dade Pub. Hous. & Cmty. Dev.*, No. 25-CV-21849-JB, 2026 WL 850492, at *2 n.1 (S.D. Fla. Mar. 27, 2026).

**C. Count III - Procedural Due Process (Liberty Interest) under 42 U.S.C. § 1983**

Count III alleges a § 1983 claim against the Board and Individual Board Trustee Frost based—once again—on a violation of the Due Process Clause of the Fourteenth Amendment. (DE 8 ¶¶ 76-83). Count III differs from Count II in that Count III pertains to a constitutionally protected *liberty* interest, whereas Count II pertains to a constitutionally protected *property* interest. Specifically, Count III alleges that these Defendants interfered with Plaintiff's constitutionally

protected liberty interest in his reputation by publicly disseminating Board minutes that contained a false and stigmatizing reference to tuberculosis, without a meaningful opportunity to contest the statement. (DE 8 ¶¶ 76–83).

In the Court's view, Count III should be analyzed under the same analytical framework as Count II. For all of the reasons identified in part III.B. above, the Court therefore dismisses Count III as to Individual Board Trustee Frost but denies the motion as to the Board.

**D. Count IV- First Amendment Retaliation under 42 U.S.C. § 1983**

Count IV alleges a § 1983 claim against the Board and Individual Board Trustees Frost and Williams based on a violation of the free-speech clause of the First Amendment. (DE 8 ¶¶ 84–94). Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for exercising First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a § 1983 First Amendment retaliation claim, a plaintiff must allege facts that show (1) he or she engaged in constitutionally protected speech, (2) the defendant's retaliatory conduct adversely affected that speech, and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on free speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

As applied here, Count IV alleges that Plaintiff engaged in protected free speech by, inter alia, pursuing administrative petitions with the Board and filing discrimination complaints with the City. (DE 8 ¶ 86). Plaintiff alleges that these Defendants retaliated against him for this protected activity by, inter alia, making an offer to settle the Board's claim for attorneys' fees and initiating an adversary proceeding in Bankruptcy Court to pursue the Board's right to attorneys' fees. (DE 8 ¶¶ 87-89).

Defendants raise five arguments in support of dismissal, each of which the Court will address in turn.

**1. Res Judicata**

Defendants first seek dismissal of Count IV based on res judicata. (DE 18 at 21). The Court rejects this argument for the same reasons identified in part III.A.1 above, namely, Defendants have not supplied this Court with records of the state court proceedings that supposedly serve as a basis for res judicata. As such, the Court cannot resolve res judicata issues at this stage of the case.

**2. *Monell* Claim against the Board**

Defendants next seek dismissal of Count IV as to the Board for failure to identify an official policy, rule, or regulation, as required by *Monell*. (DE 18 at 16). The Court rejects this argument for the same reasons identified in part III.A.2 above. Specifically, a § 1983 plaintiff need not identify a formal policy, rule, or regulation where, as here, the plaintiff challenges the actions or decisions of the municipality's final policymaker. *See Martinez*, 971 F.2d at 713–15.

**3. Absolute Immunity**

Defendants next seek dismissal of Count IV based on absolute immunity. (DE 18 at 10). The Court rejects this undeveloped argument for the same reasons identified in part III.A.3 above. Specifically, *Carollo* concerns legislative conduct and does not establish absolute immunity in this case.

**4. Quasi-Judicial Immunity**

Defendants next seek dismissal of Count IV as to Individual Board Trustees Frost and Williams based on quasi-judicial immunity. (DE 18 at 14-16). The Court rejects this argument because the Court finds that quasi-judicial immunity does not extend to the conduct alleged in

Count IV, namely, making settlement offers and initiating an adversary proceeding in Bankruptcy Court. (DE 8 ¶¶ 87-89). In the Court's view, this conduct does not resemble the traditional functions of judges. As such, quasi-judicial immunity does not apply to Count IV.

**5. Failure to State a Claim**

Finally, Defendants seek dismissal of Count IV for failure to state a claim. (DE 18 at 19–21). In support, Defendants argue that the mere making of a settlement offer to settle the Board's claim for attorneys' fees does not constitute "retaliatory conduct" for purposes of a retaliation claim under Eleventh Circuit caselaw. (DE 18 at 20-21). The Court agrees with Defendants' argument.

In addition to the settlement offer, however, Count IV also alleges that these Defendants retaliated against Plaintiff by initiating an adversary proceeding in Bankruptcy Court to pursue the Board's right to attorneys' fees. (DE 8 ¶¶ 88-89). In the Court's view, this conduct qualifies as plausible "retaliatory conduct" for purposes of a retaliation claim under Eleventh Circuit caselaw. A complaint that asserts multiple theories in support of a single claim will survive a motion to dismiss so long as at least one of those theories is sufficiently pleaded. *See Griffin v. Internal Revenue Serv.*, No. 22-24023-CIV, 2024 WL 2866657, at *1 (S.D. Fla. May 30, 2024) (noting the court found "no legal support for the idea that the Court, at the motion-to-dismiss stage, should dispense, in piecemeal fashion, with alternative theories supporting an otherwise viable claim"); *McLean v. Carnival Corp.*, No. 12-24295-CIV, 2013 WL 1024257, at *5 n.4 (S.D. Fla. Mar. 14, 2013) (finding that the plaintiff "sufficiently pleads facts to support a single-count negligence claim on at least one of her theories of liability; consequently, it is unnecessary to determine if the other theories survive at this stage of the litigation"). As such, the Court rejects this argument for dismissal.

**E. Damages**

Finally, as to all four counts, Defendants urge dismissal because Plaintiff requested damages sounding in both tort and contract. (DE 18 at 27–28). The Court rejects this argument. Section 1983 permits both legal and equitable relief caused by a constitutional violation. *See* 42 U.S.C. § 1983; *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) (noting that § 1983 compensatory damages may include monetary losses, demonstrated emotional distress, and reputational harm caused by unconstitutional conduct). The Court has reviewed the damage allegations here and finds them sufficient to survive dismissal.

## IV. CONCLUSION

For the reasons stated above, the motion (DE 18) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. As to Count I, the Court **GRANTS** the motion as to Individual Board Trustees Frost, Williams, and Fragakis, but the Court **DENIES** the motion as to the Board.
2. As to Count II, the Court **GRANTS** the motion as to Individual Board Trustee Frost, but the Court **DENIES** the motion as to the Board.
3. As to Count III, the Court **GRANTS** the motion as to Individual Board Trustee Frost, but the Court **DENIES** the motion as to the Board.
4. As to Count IV, the Court **DENIES** the motion as to the Board and Individual Board Trustees Frost and Williams.
5. In light of Plaintiff's status as a pro se litigant, all dismissals ordered here shall be without prejudice. Plaintiff may file a Second Amended Complaint within 14 days of this Order to attempt to re-plead the claims that have been dismissed here. Any such Second Amended Complaint must also include the claims that have survived

here.

6. Plaintiff need not file a Second Amended Complaint and may elect to proceed solely on the claims that have survived by way of this Order. If Plaintiff fails to file a Second Amended Complaint within 14 days of this Order, the Court will assume that Plaintiff elects to proceed solely on the surviving claims. In that case, Defendants shall file a responsive pleading to the surviving claims within 21 days of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 29th day of October 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE